IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HELEN SCOTT,                                :
                                            :
    Plaintiff,                              :
                                            :
v.                                          :    CIVIL ACTION NO.
                                            :    1:15-CV-00158-RWS
LAKE ARROWHEAD YACHT &                      :
COUNTRY CLUB, INC.,                         :
PURCELL CO., INC., LAKE                     :
ARROWHEAD PROPERTY                          :
OWNERS ASSOCIATION, INC.,                   :
and JOHN AND JANE DOES 1-3,                 :
                                            :
    Defendants.                             :

## ORDER

This case comes before the Court on Defendant Purcell Co., Inc.'s Motion for Summary Judgment [64], Defendant Lake Arrowhead Property Owners Association, Inc.'s Motion for Summary Judgment [66], and Defendant Lake Arrowhead Yacht & Country Club, Inc.'s Motion for Summary Judgment [68]. After reviewing the record, the Court enters the following Order.

## Background

This cases arises out of improvements Plaintiff Helen Scott wished to make on her residential property, located in the Lake Arrowhead Community.

At the time of Plaintiff's purchase, the Lake Arrowhead Community was owned by Defendant Purcell Co., Inc. ("Purcell") and managed by Defendant Lake Arrowhead Yacht & Country Club, Inc. ("LAYCC"). (Purcell's SOMF, Dkt. [64-2] ¶ 2.) Management and property owners in the Lake Arrowhead community were at that time bound by a Declaration of Covenants, Conditions, and Restrictions (the "CCR"). The CCR requires property owners to obtain approval from an Architectural Review Committee (the "ARC") before building exterior structures or grading or filling on their property.

In 2009, Dorothy Bonds was hired to serve as the Director of Property Management for the Lake Arrowhead Community. (Id. ¶ 10). LAYCC employs Bonds, who also serves as the head of the ARC. (Id. ¶ 11.) On December 5, 2013, Plaintiff submitted an Exterior Work Permit to the ARC for approval to trim trees and shrubbery from her property. The ARC granted Plaintiff permission, and the landscaping work was performed. On June 30, 2014, Plaintiff submitted another Exterior Work Permit, seeking approval to add a landscape wall and pavers. The ARC approved Plaintiff's request on July 2, 2014 and the work was completed.

Also on June 30, 2014, Plaintiff submitted an Exterior Work Permit

seeking permission to extend her driveway. (Purcell's SOMF, Dkt. [64-2] ¶ 16.) In May of 2014, Plaintiff had communicated her intention to regrade her driveway to Bonds. (Pl.'s Resp., Dkt. [69] at 6.) At that time, Bonds provided a copy of the exterior work application form, requested a drawing showing the measurements of the proposed driveway, and informed Plaintiff that gravel would not be an approved material for driveways in the Lake Arrowhead Community. On July 2, 2014, in the same email communicating approval of Plaintiff's request to install a landscape wall and pavers, Bonds informed Scott that she had not received driveway plans. (Id. at 7.)

     Plaintiff recalls speaking on the telephone with a representative who informed her that her plans were approved. (Id.) But Defendants claim that in fact Plaintiff had not received approval to move forward with her driveway work. (Purcell's SOMF, Dkt. [64-2] ¶ 19.) After Plaintiff's initial application, Bonds requested a more specific site plan because of concerns that the altered driveway would create too much impervious surface on the lot. Plaintiff sent in additional information. (Pl.'s Resp., Dkt. [69] at 7.) On July 16, 2014, Bonds indicated that she would need more time to review the driveway plans. But at that time, Plaintiff's contractor had already begun work on the backyard

3

portion of her project.

On July 28, 2014, Bonds emailed Plaintiff to inform her that white rocks–which Plaintiff had used to fill in parts of her yard–were a material requiring approval and to request that Plaintiff remove the rocks that had already been installed. (Pl.'s Resp., Dkt. [69] at 9.) By July 30, 2014, Plaintiff had completed the construction work: extending her driveway, installing Astroturf, and filling in parts of her yard with the white rocks. (Purcell's SOMF, Dkt. [64-2] ¶ 21.) LAYCC issued a Stop Work Order. (Id. ¶ 22.)

On August 14, 2014, LAYCC filed a Verified Complaint in the Superior Court of Cherokee County, Georgia, seeking to enjoin Plaintiff from performing the unapproved improvements to her property as well as to enjoin her to remove the unapproved improvements that had already been performed. (Id. ¶ 24.) Specifically, LAYCC sought relief for Plaintiff's construction of an unapproved driveway, installation of Astroturf, and use of unapproved filling material.(Id. ¶ 25.)

Plaintiff brings this case under 42 U.S.C. § 1981 and the federal Fair Housing Act, 42 U.S.C. § 3617 ("FHA"). Plaintiff is a member of a racial minority and claims that Defendants' conduct has violated the federal civil

rights laws.  She claims that in denying her application for work on her property, Defendants had an intent to discriminate against Plaintiff on the basis of race.  She claims that Defendants' unlawful discriminatory animus is evidenced by their disparate treatment of other homeowners who are not members of a racial minority and who have made similar improvements to their properties in the past.  Defendants move for summary judgment on all of Plaintiff's claims.

## Discussion

**I.     Legal Standard – Summary Judgment**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where the

Case 1:15-cv-00158-RWS   Document 87   Filed 08/31/16   Page 6 of 15

moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary

AO 72A
(Rev.8/82)

judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.   Analysis

### A.   42 U.S.C. § 1981

"In order to make out a prima facie case of non-employment discrimination sufficient to withstand a motion for [judgment] as a matter of law under section 1981, a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (in this case, the making and enforcing of a contract)." Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235 (11th Cir. 2000). In order to establish a § 1981 claim, a plaintiff must provide proof of intentional discrimination. "Section 1981 liability must be founded on purposeful discrimination." Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999). Accordingly, disparate impact evidence is insufficient to establish a § 1981 claim. "[O]nly direct or inferential modes of proving

7

intentional discrimination are available to the § 1981 plaintiff." Id.

Here, Defendants move for summary judgment on grounds that Plaintiff has failed to provide evidence of discrimination. Defendant Purcell argues that Plaintiff cannot show discrimination because she received approval for two other work permits and because Plaintiff fails to provide evidence of "similarly situated" persons who received approval where she did not. Defendant LAYCC moves for summary judgment on grounds that Plaintiff cannot establish a prima facie case of discrimination. Finally, Defendant LAPOA also argues that Plaintiff cannot show intentional discrimination, plus, that LAPOA does not have the authority to take the legal action Plaintiff challenges in this action.

The Court agrees that Plaintiff has failed to provide adequate evidence of intentional discrimination such to create a genuine issue of material fact. In her response, Plaintiff concedes there is no evidence in the record that constitutes direct evidence of intentional discrimination. (Pl.'s Resp., Dkt. [69] at 11.) And the circumstantial "evidence" that she points to is neither supported by citations to specific facts in the record nor sufficient, even if supported, to sustain a claim under § 1981. (See id. at 12.) When a plaintiff compares

individuals "to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides race, since '[d]ifferent treatment of dissimilarly situated persons does not violate' civil rights laws." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1273–74 (11th Cir. 2004) (quoting E & T Realty v. Strickland, 830 F.2d 1107, 1109 (11th Cir. 1987)) (internal citation omitted). Plaintiff does not identify any specific, similarly situated, non-minority individual who was treated better in a similar situation. For example, in Plaintiff's Statement of Material Facts, she states that she has "identified a number of homeowners not members of a racial minority who have made similar improvements to their property to those that were disapproved by the ARC such as installation of white rocks, artificial turf and concrete pads and drives." (Pl.'s SOMF, Dkt. [69-4] ¶ 48.) But Plaintiff's Statement of Material Facts fails to list those homeowners and their improvements. Moreover, the deposition testimony that Plaintiff cites to in support of this contention does not provide any specific facts about the improvements made by those other homeowners. (See Scott Depo., Dkt. [69-11] at 48:20-52:18.) The Court cannot conclude on this record that there were

9

any other similarly situated persons who received approval.[1]  Accordingly, no genuine issue of fact remains and Defendants are entitled to summary judgment on Plaintiff's § 1981 claim.

B.     The Fair Housing Act

The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of ... any right granted or protected by [the FHA]." 42 U.S.C. § 3617. As the district court noted in Simoes v. Wintermere Pointe Homeowners Association, Inc., the law in the Eleventh Circuit regarding the particulars of a § 3617 claim is "sparse."  No. 6:08-CV-01384-LSC, 2009 WL 2216781, at *6 (M.D. Fla. July 22, 2009), aff'd sub nom. Simoes v. Wintermere Pointe Homeowners Ass'n, Inc., 375 F. App'x 927 (11th Cir. 2010).   But of course a party cannot innocently and unintentionally "coerce, intimidate, threaten, or interfere with" a person's enjoyment of the rights protected by sections 3603–3606.  Rather, the discrimination must be intentional.  E.-Miller v. Lake Cty. Highway Dep't, 421

---

[1] Additionally, the Court notes that Plaintiff did receive approval for her improvements in the past.  For example, Bonds approved Plaintiff's backyard improvement plan in July 2014. (Pl.'s Resp. to Def. LAPOA's SOMF, Dkt. [69-1] ¶ 18.)

F.3d 558, 563 (7th Cir. 2005) ("a showing of intentional discrimination is an essential element of a § 3617 claim"); see also Sofarelli v. Pinellas Cty., 931 F.2d 718, 722-23 (11th Cir. 1991) (concluding that a § 1367 claim could proceed against certain individuals because the plaintiff had introduced evidence suggesting they had "racial motivations" or "racial animus," but rejecting plaintiff's claim against the sheriff where there were no allegations the sheriff "acted with racial animus").  Accordingly, in order to succeed on this claim, Plaintiff must establish that race "played some role" in the challenged actions of Defendants.  Sofarelli v. Pinellas Cty., 931 F.2d 718, 722 (11th Cir. 1991).

Defendants move for summary judgment on Plaintiff's FHA claims for much the same reasons as on Plaintiff's § 1981 claims.  LAPOA argues that Plaintiff cannot show the requisite discriminatory animus and does not allege actionable coercion, intimidation, threats or interference.  LAYCC restates its § 1981 arguments.  Purcell argues that the conduct Plaintiff complains of does not create a claim under the FHA.  Plaintiff's arguments in support of her FHA claim rely primarily on the "nexus between harassment of Scott and her daughter that can reasonably be inferred to have been motivated by racial

11

animus and legal action taken by Defendant LAYCC, through Ms. Bonds, against Plaintiff."  (Pl.'s Resp., Dkt. [69] at 16.)

The Court finds that nexus is not strong enough to sustain a claim under the Fair Housing Act.  While "a plaintiff may demonstrate intentional discrimination if the 'decision-making body acted for the sole purpose of effectuating the desires of private citizens, that racial considerations were a motivating factor behind those desires, and that members of the decision-making body were aware of the motivations of the private citizens,'" Plaintiff has failed to do so here.  Hallmark Developers, Inc. v. Fulton Cty., 466 F.3d 1276, 1284 (11th Cir. 2006) (quoting United States v. Yonkers, 837 F.2d 1181, 1225 (2d Cir. 1987)).  The record before the Court does not contain sufficient evidence to create a genuine issue of material fact as to discriminatory animus.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim under the Fair Housing Act.  Because the Court has granted summary judgment to Defendants on both Plaintiff's § 1981 and FHA claims, Plaintiff is not entitled to recover either punitive damages or attorneys' fees on those claims.

C.   Request for Declaratory Relief

In Count III of her Complaint, Plaintiff seeks a declaration that the work

she has conducted does not require approval by LAPOA or any other entity. The Court has granted summary judgment for Defendants on all of Plaintiff's federal claims, which leaves only Count III. Because the federal questions of this case have been resolved, the Court has jurisdiction over this remaining claim only if it satisfies the requirements for diversity jurisdiction imposed by 28 U.S.C. § 1332. Here, Plaintiff's Complaint contains no allegation of the amount in controversy. The Court cannot conclude from the face of the well-pleaded Complaint that it has original subject matter jurisdiction over Plaintiff's remaining claim.

Under 28 U.S.C. § 1367, a district court may exercise supplemental jurisdiction over state-law claims related to any claims over which the court has original jurisdiction. But § 1367 is clear in providing that the district court may decline supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Indeed, the United States Supreme Court has held that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). And the Eleventh

13

Circuit has held that federal courts are "strongly encourage[d] or even require[d]" to dismiss state-law claims "if the federal claims are dismissed prior to trial." Ingram v. Sch. Bd. Of Miami-Dade Cty., 167 F. App'x 107, 108-09 (11th Cir. 2006) (quoting Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999)). The Court has resolved all federal questions present in the case and the remainder of the parties' dispute turns on questions of state law that involve no federal interest. The Court therefore declines supplemental jurisdiction over the remaining state-law claim in this case. As such, Plaintiff's Count III seeking a declaratory judgment is **DISMISSED, without prejudice**, for lack of subject matter jurisdiction.

Plaintiff may still be entitled to relief on that claim in state court. But here she simply has not met the high burdens imposed by the federal civil rights laws. See Lawrence v. Courtyards at Deerwood Ass'n, Inc., 318 F. Supp. 2d 1133, 1143 (S.D. Fla. 2004)("[T]he FHA was passed to ensure fairness and equality in housing[,] not to become some all purpose civility code regulating conduct between neighbors.") (internal citation and modifications omitted).

## Conclusion

14

AO 72A
(Rev.8/82)

In accordance with the foregoing, Defendant Purcell's Motion for Summary Judgment [64], Defendant Lake Arrowhead Property Owners Association's Motion for Summary Judgment [66], and Defendant Lake Arrowhead Yacht and Country Club's Motion for Summary Judgment [68] are **GRANTED** as to Counts I and II.  Count III is **DISMISSED without prejudice** for a lack of subject matter jurisdiction.

The Clerk is **DIRECTED** to close the case.

**SO ORDERED**, this 31st day of August, 2016.

                                                   *[signature]*
                                                   _____
                                                   **RICHARD W. STORY**
                                                   United States District Judge